## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND (NORTHERN DIVISION)

| | | |
|---|---|---|
| TECH USA, LLC, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Civil Action No.: |
| | ) | |
| JACKIE KELLY, W.G. HALL, LLC, | ) | |
| ATWORK STAFFING, LLC, | ) | |
| d.b.a. ATWORK PERSONNEL | ) | |
| SERVICES, ATWORK FRANCHISE, | ) | |
| INC., and JEFFREY KANTNER, | ) | |
| Individually and d.b.a. WGHALL | ) | |
| STAFFING (trade name ATWORK | ) | |
| STAFFING), | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| _____ | ) | |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

NOW COMES the Plaintiff TECH USA, LLC ("TECH USA" or "Plaintiff") by and through its attorneys Allan P. Hillman, Esq. of Kern & Hillman, LLC and Grover C. Outland, III, General Counsel, TECH USA, and sues Defendants Jackie Kelly ("Ms. Kelly"); W.G. Hall, LLC, a Tennessee limited liability company with its principal office in Knoxville, TN ("WGH"), AtWork Staffing, LLC, a Tennessee limited liability company with its principal office in Knoxville, TN ("AWS"); AtWork Franchise, Inc., a Tennessee corporation with its principal office in Knoxville, TN ("AWF," together with WGH and AWS, collectively the "Entity Defendants"); and Jeffrey Kantner, individually ("Mr. Kantner") and d.b.a. WGHall Staffing (trade name ATWORK STAFFING) (the "Kantner Trade Name(s)"); (Ms. Kelly, WGH, AWS, AWF, and Mr. Kantner being collectively referred to hereinafter as "Defendants").  TECH USA

sues Defendant Ms. Kelly for (i) breach of contract (post-term covenant not to solicit TECH USA customers); (ii) breach of contract (post-term covenant not to compete); (iii) breach of contract (confidential information); (iv) breach of contract (misappropriation of company property); (v) statutory trade secret misappropriation; (vi) breach of duty of loyalty; (vii) common law unfair competition; and (viii) civil conspiracy; and sues the Entity Defendants, and Mr. Kantner for (a) tortious interference with the contract between Plaintiff and Ms. Kelly; (b) statutory trade secret misappropriation; (c) common law unfair competition; and (d) civil conspiracy.

## THE PARTIES,
## JURISDICTION AND VENUE

### PLAINTIFF TECH USA

1.      TECH USA, LLC is a Maryland limited liability company with its principal place of business at 8334 Veterans Highway, Millersville, MD 21108.  Each of Plaintiff TECH USA's members is a citizen of Maryland; consequently, Plaintiff is a citizen of Maryland.

2.      TECH USA is a mid-size competitor in the nationwide and worldwide market for providing customized staffing, consulting, and subcontracting support to clients in various industries.  Plaintiff opened for business in a single 1,000 square foot office in Millersville, Maryland in early 1998 and has, in the past fifteen years, grown to 12 offices in 10 States. TECH USA has expertise particularly in the areas of engineering, light industrial, information technology, infrastructure/telecommunications, and scientific services.  Its competitors range from larger companies than TECH USA (such as one or more of the Entity Defendants), to mid-sized companies (like Plaintiff), to small start-ups.  TECH USA develops close working relationships with its customers in order better to understand and service their personnel and

hiring needs, and, furthermore, extensively trains and develops close working relationships with its internal and external (contract) employees in order more completely and professionally to meet TECH USA's customers' personnel requirements and hiring needs.

### INDIVIDUAL DEFENDANT MS. KELLY

3.      Defendant Ms. Kelly is an individual and a resident of Arizona.  On information and belief, she carries on a regular business, is employed, or habitually engages in a vocation at the Phoenix, Arizona office of one or more of the Entity Defendants at 2432 W. Peoria Avenue, #1300, Phoenix, AZ  85029.  On information and belief, Ms. Kelly resides at 4620 Cobblestone Street, Gilbert, Arizona 85297.

### THE ENTITY DEFENDANTS

4.      The website http://www.atworkpersonnel.com/ is owned or controlled by one or more of the Entity Defendants and a review of the large United States map on its Locations page indicates that there are dozens of AtWork Personnel Services offices across the United States and that their business is staffing, which is also the business of Plaintiff.  Pursuant to information from the Arizona and Tennessee Secretaries of State, the principal office of each of the Entity Defendants is in either Knoxville or White Pine, Tennessee, and the principal offices of both Defendants WGH and AWF are located at 3215 W. Governor John Sevier Highway, Knoxville, TN  37920-5540, while the principal office of Defendant AWS is 1470 Main Street, White Pine, TN  37890.  On information and belief, one or more of the Entity Defendants is the franchisor of a system of AtWork Personnel Services and/or AtWork Staffing offices.  To the extent that a franchisor and/or franchise system is involved in this matter, the Entity Defendant that is franchisor is vicariously liable for the acts of its franchisees (and their employees).  Furthermore, to the extent that a franchisor and/or franchise system is involved in this matter, each franchisee,

franchisee office, and/or employee of any franchisee is the agent of the Entity Defendant that is the franchisor and creates liability for that franchisor on master-servant and/or agency theories, including, without limitation, implied authority, apparent authority, and express authority.

5.   As the website indicates, one or more of the Entity Defendants own or control AtWork Personnel Services offices in states adjoining Maryland, such as Virginia, Delaware and Pennsylvania.  On information and belief, one or more Entity Defendants, either directly or by its/their agents:

(i) transacts or has transacted business in the State of Maryland by (a) soliciting and/or hiring Maryland residents for contract assignments and/or direct placements in Maryland and/or in other States, (b) advertising via its website and other means and/or making offers to Maryland residents to work on a contract or direct placement basis for such Defendants' customers in Maryland and/or in other States, and/or (c) soliciting, making offers to and/or providing services to the Maryland offices of companies/customers headquartered in other States and/or in Maryland;

(ii) contracts and/or has contracted to supply personnel and/or services in the State of Maryland;

(iii) causes and/or has caused tortious injury to Plaintiff, which is headquartered in Maryland, by an act of tortious interference with a contract entered into in Maryland which specifically provides for jurisdiction before the courts of the State of Maryland;

(iv) causes and/or has caused tortious injury to Plaintiff, which is headquartered in Maryland, by an act (or omission) outside of Maryland, and such Defendants regularly do or solicit business and/or advertise for business and/or employees and/or engage in other persistent course(s) of conduct in Maryland and/or derive substantial revenue

from services or personnel used, provided, located, contracted, and/or assigned in the State of Maryland, all as set forth in (i) and (ii) above.

## INDIVIDUAL DEFENDANT MR. KANTNER

6.      Defendant Mr. Kantner is an individual and, on information and belief, a resident of Pennsylvania.  On information and belief (based on his LinkedIn Profile), Defendant Mr. Kantner carries on a regular business, is employed, or habitually engages in a vocation at the Reading/Temple, Pennsylvania office of one or more of the Entity Defendants at 130 Kenhorst Blvd, Reading, PA 19607.  On information and belief, Mr. Kantner resides at 200 Tulip Hill Road, Temple, PA  19560.  Mr. Kantner's LinkedIn Profile recites that he works in staffing and recruiting in Temple, Pennsylvania and is President at WGHall Staffing (trade name AtWork Staffing).  After diligent search, Plaintiff has been unable to find an entity registered by the name "WGHall Staffing."  Consequently, Plaintiff sues Mr. Kantner individually and d.b.a. "WGHall Staffing" (trade name AtWork Staffing) (collectively the "Kantner Trade Name(s)").

7.      On information and belief, Defendant Mr. Kantner, whose LinkedIn Profile recites that he works in Temple (Reading area), Pennsylvania, within 40-50 miles of the Maryland/Pennsylvania border, either directly or by his agents:

(i) transacts or has transacted business in the State of Maryland by (a) soliciting and/or hiring Maryland residents for contract assignments and/or direct placements in Maryland and/or in other States, (b) advertising via its website and other means and/or making offers to Maryland residents to work on a contract or direct placement basis for such Defendant's customers in Maryland and/or in other States, and/or (c) soliciting, making offers to and/or providing services to the Maryland offices of companies/customers headquartered in other States and/or in Maryland;

(ii) contracts and/or has contracted to supply personnel and/or services in the State of

Maryland;

(iii) causes and/or has caused tortious injury to Plaintiff, which is headquartered in

Maryland, by an act of tortious interference with a contract entered into in Maryland

which specifically provides for jurisdiction before the courts of the State of Maryland;

(iv) causes and/or has caused tortious injury to Plaintiff, which is headquartered in

Maryland, by an act (or omission) outside of Maryland, and such Defendant regularly

does or solicits business and/or advertises for business and/or employees and/or engages

in other persistent course(s) of conduct in Maryland and/or derives substantial revenue

from services or personnel used, provided, located, contracted, and/or assigned in the

State of Maryland, all as set forth in (i) and (ii) above.

8.      This Court has jurisdiction under all Counts of this Complaint pursuant to 28

U.S.C. §1332, because the parties are of diverse citizenship and the amount in controversy, with

respect to the equitable claims alone, exceeds the sum of $75,000, exclusive of interest and costs.

Jurisdiction and venue are proper in this judicial district because Defendant Ms. Kelly expressly

agreed in paragraph 7 of her Confidentiality/Non-Competition Agreement with Plaintiff (a true

and correct copy of which Agreement is attached hereto as **Exhibit 1**) that she irrevocably

consents,

> in any action brought by the Company in connection with any
> matters described in paragraph 5 of this Agreement [providing for
> injunctive relief where TECH USA has been caused immediate
> irreparable harm], to the jurisdiction of any federal or state court
> within the State of Maryland, as the only mandatory and proper
> forum, and [she] waive[s] all questions, issues, and defenses as to
> personal jurisdiction and venue for the purpose of carrying out this
> provision.

9.     Agreement ¶5 provides that in the event of any breach of the "above provisions" of the Agreement (i.e. paragraphs 1-4, including, without limitation, covenants relating to Confidential Information, Trade Secrets, Company Property, Non-solicitation, and Non-competition), such breach will cause TECH USA "immediate irreparable harm and that no remedy at law would be adequate to compensate [TECH USA] in any such event."  And, further, in the event of any such breach, Defendant Ms. Kelly agrees in ¶5 that Plaintiff "shall have the right to proceed directly to any state or federal court in Maryland under the usual equity rules in order to obtain injunctive relief, including, without limitation, temporary restraining orders, preliminary injunctions and permanent injunctions against such breach (threatened or otherwise)."  Agreement ¶5 further provides that the injunction shall run for a period of eighteen (18) months from the date the injunction is granted, rather than eighteen months from the date of Termination of Employment (in this case, September 27, 2013, Ms. Kelly's last day of employment with Plaintiff).

10.     This Complaint is one of the "legal actions for matters described in paragraph 5" of the Agreement.  Therefore, it is exempted from the mediation requirement in Paragraph 8 of the Confidentiality/Non-Competition Agreement.

## THE CONTROVERSY

11.     Pursuant to the terms of the aforementioned Confidentiality/Non-Competition Agreement between Plaintiff and Ms. Kelly, she became an employee of Plaintiff on or about September 7, 2012, serving as an Account Executive in TECH USA's engineering/light industrial division or vertical where she focused on staffing sales and solicitations to customers in the engineering, light industrial, and manufacturing industries.  Over her 12+ month period of employment with Plaintiff, TECH USA spent tens of thousands of dollars on Ms. Kelly's salary,

training and development as an Account Executive.  Defendant Ms. Kelly worked solely from

and in TECH USA's Phoenix, AZ.  After just over one year with TECH USA, she resigned from

TECH USA's employment as an Account Executive on September 27, 2013. She resurfaced the

following month making a solicitation/sales call, in her capacity as a salesperson for one or more

of the Entity Defendants, on a TECH USA customer that she had serviced while at TECH USA.

A recent "screen shot" of Defendant Ms. Kelly's LinkedIn profile (a true and correct copy of

which is attached hereto as **Exhibit 2**) taken during the last week of October 2013) confirms that

she is in fact working as a "Business Consultant" for one or more of the Entity Defendants

(Plaintiff's competitors), doing business as (AtWork) Personnel Services, in its Phoenix, AZ

office, which provides staffing services in the same light industrial, manufacturing and/or

engineering lines of business that Plaintiff services.

      12.    Additionally, Defendant Ms. Kelly's LinkedIn Profile makes plain that, in her

new position, she is competing with TECH USA by working for Defendants in the identical

industry (Staffing and Recruiting) in the very same metropolitan area (Phoenix, AZ) where she

worked for Plaintiff, clearly within 50 miles of the TECH USA location in Phoenix where she

had been officed for over 1 year prior to joining Defendants.  Among other things, Defendant

Mr. Kantner admitted in a Tuesday, October 29, 2013 email (a true and correct copy of which is

attached hereto as **Exhibit 3**) to Plaintiff's in-house General Counsel that one of the lines of

staffing business that Ms. Kelly "is going after" consists of "light industrial staffing…for our

Phoenix, Az office."   Plaintiff TECH USA also specializes in light industrial staffing.  In his

October 29 email, Defendant Mr. Kantner (not a lawyer) contests the validity of the non-

competition restrictions in his new employee's Agreement with TECH USA, but does not claim

they are over broad in any way.  He contends instead that the non-competition restrictions are

unenforceable unless Defendant Kelly had received a bonus or other additional benefit for signing the Agreement, because he believed that merely hiring an at-will employee was not sufficient consideration for the restrictions.  But Defendant Kantner was and is wrong, because hiring of an employee, including an at-will employee, IS sufficient consideration for non-competition restrictions under the law of the State (Maryland) selected in the parties' Agreement. *See, e.g., Gill v. Computer Equipment Corp*., 266 Md. 170, 180, 292 A.2d 54, 59 (1972) (non-compete signed at beginning of at-will employment); *Simko, Inc. v. Graymar*, 55 Md. App. 561, 567, 464 A.2d 1104, 1107-8 (1983) (continued at-will employment is sufficient consideration to support a covenant not to compete).

13.     As set forth below, the Confidentiality/Non-Competition Agreement protects TECH USA's trade secrets and Confidential Information (collectively "Confidential Information") and also requires Defendant Ms. Kelly to refrain from, among other things, (a) competing with TECH USA within a limited geographic area, (b) soliciting TECH USA's employees and/or encouraging the departure of any of TECH USA's employees from TECH USA's employment for a limited time, and (c) soliciting TECH USA's clients/customers for a limited period of time after Ms. Kelly leaves its employ.

14.     Subparagraphs (a) and (c) of Confidentiality/Non-Competition Agreement ¶ 3 (Non-solicitation/non-hire), which Agreement the Defendant Ms. Kelly signed provides (in pertinent part) that ". . . for eighteen (18) months after Termination of Employment, [Defendant Ms. Kelly] will not in any manner:

> (a)   approach, contact, or solicit, or assist others to approach, contact, or solicit any individual, business, corporation, other entity, which at any time within the two (2) year period prior to the date of Termination of Employment, was a Customer (i) of [TECH USA], which Customer you serviced or with which Customer you had contact, …

      (c) solicit, induce, attempt to solicit or induce, or assist others to solicit, induce or attempt to solicit or induce any Customer of TECH USA (or of the TECH USA Companies) to terminate, eliminate, or reduce its business relationship with [TECH USA], or do anything, directly or indirectly to interfere with the business relationship between [TECH USA] and (i) any of their/its Customers. . .

15.     Subparagraphs (a) and (b) of Confidentiality/Non-Competition Agreement ¶ 4

(Non-competition) provides (in pertinent part) that

     . . . for eighteen (18) months after Termination of Employment, [Ms. Kelly] agree[s] that [she] will not, either directly or indirectly, in any manner or capacity, as employee, principal, agent, partner, officer, director, member of any association or limited liability company, consultant, advisor or in any capacity other than in [her] capacity as an employee of [TECH USA]:

     (a) . . . (after Termination of Employment) engage in or work for any individual, business, corporation, other entity or activity which engages (in whole or in part) in the business of recruiting, assigning, placing, or providing employees, on a contingent search, direct placement, permanent, contract or temporary basis, from or in an office located within fifty (50) miles of any of [TECH USA's] offices in which [she] worked during the last twenty-four (24) months of [her] employment with [TECH USA].

     (b) . . . (after Termination of Employment) approach, contact, solicit, divert, accept, or contract with any employees, any employees or personnel to provide services on a contingent search, direct placement, permanent, contract, or temporary basis to any individual, business, corporation, other entity or activity which at any time within the two (2) year period prior to the date of Termination of Employment, has been, is, or was a Customer of TECH USA…that you serviced or with which Customer you had contact, or the relationship with which Customer you managed at any level….

As a general matter, TECH USA does not seek to bar Ms. Kelly from working in the staffing industry.   Rather, consistent with the express wording of the above-quoted contractual restriction, Plaintiff seeks only to restrain her from any of the activities prohibited by Agreement paragraph 4(a) within 50 miles of Plaintiff's Phoenix, AZ office, for eighteen (18) months.   To

reiterate, the 18-month period commences upon the later of the termination of employment or the date an injunction halting any violation is granted. (Id at ¶ 5), and this provision is designed to address precisely the situation which exists here:  TECH USA bargained for a full eighteen (18) months of protection.  It has confirmed it was not receiving that for which it had bargained; unless the 18-month restriction runs from the date of the Court's injunction order, it will be denied a material part of its bargained-for protection.  Defendant Mr. Kantner, speaking for himself and, presumably, one or more of the Entity Defendants, claimed in a Tuesday, October 29, 2013 email to Plaintiff's in-house General Counsel that non-competes "are ***worthless*** in the court of law."  (Emphasis added.)  *See* **Exhibit 3** hereto.  To the contrary, the post-term non-competition covenants contained in the Confidentiality/Non-Competition Agreement are readily enforceable under Maryland law (the governing law that Plaintiff and Defendant Ms. Kelly selected in their Agreement), and injunctive actions for breaches of the post-term covenants not to compete, non-solicitation covenants, and related claims (Agreement, §§ 3(a), 3(c), 4(a), and 4(b)), Trade Secret/Confidential Information violations (Agreement, § 1), Company Property violations (Agreement § 2), and are to be litigated in a court of competent jurisdiction in Maryland, such as this Court.  Hence this Complaint.

16.     As detailed in his Declaration (a true and correct copy of which is attached hereto as **Exhibit 4)** on October 23, 2013, Robbie L. Rhodes, Sr., a candidate for a staffing assignment that Plaintiff had submitted to its engineering customer Caltrop in Phoenix, was in the conference room being interviewed by Leonard (who also goes by "Len"), a Caltrop manager. The conference room was surrounded by glass which allows one to see in the receptionist area. A blonde woman who said her name was "Jackie" entered the lobby and was just standing at the front desk. After her standing there for about 10 minutes, TECH USA's customer's manager Len

made a statement to TECH USA's candidate Mr. Rhodes wondering who she was. Eventually he went out to see who she was; however, upon him leaving the conference room, he left the door wide open which allowed Mr. Rhodes to hear the entire conversation.  The Caltrop manager Len then asked the blonde woman who she was, and Mr. Rhodes heard her say her name was "Jackie."  She then stated that she was a former employee of Tech USA and she had her own company. Jackie told Len that she had become aware of a position that Caltrop was trying to fill and she had some resumes for him to review.  The Declaration of Robby L. Rhodes, Sr. affirming the truth of the matters recited in paragraphs 16-17 of this Complaint is **Exhibit 4** hereto.

17.     Caltrop manager Len informed Jackie that Mr. Rhodes was his last interview and he would be leaving that afternoon heading back to California. Jackie's response to Len was that she could send him some resumes for his review if he liked.  Jackie seemed to Mr. Rhodes to be aggressive and almost insisted that he review some resumes from her and gave TECH USA's customer's manager her business card. Len told her OK that was fine and she left.  When Caltrop's manager Len returned to the conference room, he seemed agitated by the whole event. The distance from TECH USA's candidate Mr. Rhodes (in the conference room) to Jackie and Len (in the lobby) was no more than 15 feet, which allowed Mr. Rhodes to hear the entire conversation.  The blonde woman Mr. Rhodes observed speaking with Plaintiff's customer's manager Len in the lobby on October 23, 2013 is identified by Mr. Rhodes as the same person whose photograph appears in the LinkedIn profile of "Jackie K," attached to Mr. Rhodes' Declaration as **Exhibit A**.  That **Exhibit A** to the Declaration and **Exhibit 2** to the Complaint are the same document: the screenshot of Defendant Ms. Kelly's LinkedIn Profile.

18.     On October 28, 2013, TECH USA sent Defendant Ms. Kelly a demand email (a true and correct copy of which demand email is attached hereto as **Exhibit 5**); the response from her was cursory and evasive, failing to address the various contractual violations documented in Plaintiff's demand email.   On October 29, 2013, TECH USA also sent a demand letter to the Entity Defendants, in care of the Defendant Mr. Kantner and an individual that Plaintiff understands to be a manager at the AtWork Personnel Services' Phoenix office (a true and correct copy of which demand letter is attached hereto as **Exhibit 6**).   The Entity Defendants, by Jeffrey Kantner, in his individual and corporate capacities, responded that same day by email dated October 29, 2013 (identifying himself as "President," which is also the title on his LinkedIn Profile, attached hereto as **Exhibit 7**) to assert, among other things, that non-competes are "worthless" while admitting that Defendant Ms. Kelly was working for Mr. Kantner and one of more of the Entity Defendants (which he did not identify) "at our Phoenix Az office" in providing staffing services in one or more of the staffing lines ("light industrial") that Plaintiff also provides.

19.     Shortly after her employment with TECH USA terminated in late September 2013, Defendant Ms. Kelly started work with one of more of the Entity Defendants doing business as (AtWork) Personnel Services at its/their Phoenix, AZ office, well within the fifty-mile prohibited zone (i.e., 50 miles from TECH USA's Phoenix, AZ office) in violation of the limited Non-Competition covenant to which Ms. Kelly had agreed in her Confidentiality/Non-Competition Agreement with TECH USA.   Moreover, Defendant Ms. Kelly's use of Confidential Information, such as the fact that Caltrop, one of TECH USA's engineering customers, has specific personnel needs that she could exploit for her own benefit and for the benefit of her new employer, constitutes a violation of Confidentiality/Non-Competition

Agreement, ¶ 1, as detailed below, and of the Maryland Uniform Trade Secrets Act, as also detailed below.  Furthermore, her LinkedIn Profile is a clear communication with (and broadcast to) current TECH USA employees about her new position with one or more of Entity Defendants - - in that regard, she may as well be standing on a rooftop openly publicizing her blatant violation of her contractual obligations to TECH USA.

20.     During late October 2013, Plaintiff TECH USA learned of Defendant Ms. Kelly's violation of her Confidentiality/Non-Competition Agreement with TECH USA, and of Defendant Mr. Kantner's tortious interference with contractual relations and (on information and belief) other wrongdoing; and, additionally, on information and belief, of one of more of the Entity Defendants' tortious interference with contractual relations and other wrongdoing, and this suit followed promptly.

21.     Under paragraph 1 (<u>Confidential Information/Trade Secrets</u>) of the Confidentiality/Non-Competition Agreement between Defendant Ms. Kelly and Plaintiff, Defendant Ms. Kelly agreed that "during [her] employment by [TECH USA] and, after [her] termination, whether by [Defendant Ms. Kelly or TECH USA] with or without cause (collectively "Termination of Employment"), [she agrees] that [she] shall not use for [her] own benefit, or the benefit of any third party, or disclose or divulge to any third party, any Confidential Information (as defined below) or Trade Secrets, as defined in the Maryland Uniform Trade Secrets Act ("MUTSA")."  Under such paragraph 1, "Confidential Information" means, <u>inter alia</u>, all information

> (the selection, arrangement, and compilation of which is not
> generally known by [TECH USA's] competitors or the general
> public) concerning [TECH USA], including, but not limited to: (a)
> its/their financial affairs, sales, and marketing strategies; business
> and marketing plans, profit margins and pricing policies and
> practices, sales and marketing techniques; financial data and plans

history and data forecasts; fee schedules, orientation guides, commission and/or bonus plans; personnel information including without limitation compensation structures, qualifications, and hiring practices, personnel training techniques and materials; product manuals, training manuals, presentations, and materials (whether provided at conferences, meetings, over the Internet, or using other means of communication/transmission; inventions, processes and compilations of information; records and specifications, computer database, programs and software; acquisition plans; pricing and costs; (b) any of the following information about corporations, companies, or other entities, including, without limitation, their end-clients (collectively "Customers") for which [TECH USA] employs, recruits, supplies or otherwise finds or arranges employees: any lists or other compilations of Customers; such Customer's names, addresses, and direct-dial, mobile, and other telephone numbers; staffing requirements, personnel needs, pricing sensitivities or preferences; margin tolerances regarding pricing; and any other information concerning or relating to any future or ongoing requirements for services of Customer(s) that you are or have been providing services to on behalf of [TECH USA], as well as the requirements of any other customers, individuals or entities that you have been introduced to or have otherwise gained information about, either directly or indirectly, as a result of your employment with [TECH USA]….

22.     Under Confidentiality/Non-Competition Agreement ¶ 2 (<u>Company Property</u>), "[u]pon Termination of Employment, [Defendant Ms. Kelly] agree[s] to immediately return to [TECH USA] any and all property, records and documents [Defendant Ms. Kelly] obtained or developed in the course of such employment, including, without limitation, any lists or other documents, in any medium capable of being fixed or rendered in tangible format from which it later can be perceived, reproduced and/or otherwise communicated, containing in whole or in part any of the Confidential Information or Trade Secrets."

23.     Plaintiff's Chairman and CEO Mr. Howell risked a substantial part of his life savings in the start-up of TECH USA and its predecessor.  Mr. Howell knows from personal experience that obtaining a customer and then holding onto that customer in today's highly

competitive marketplace is a very difficult, time-consuming and investment-intensive process, especially in the staffing industry in which Plaintiff TECH USA competes.

24.     From each of its offices, TECH USA expends a large amount of money, time, and other resources on its salespeople, training them to research their territory and to find and acquire customers and develop customer relationships.   Plaintiff also makes major investments in national sales training conferences which Defendant Ms. Kelly and all, or almost all, of TECH USA's account executives, Managing Directors, and/or recruiters attend.   For even a well-trained salesperson, obtaining a new customer can take anywhere from six (6) to twenty-four (24) months from initial "cold call" or introduction/referral, to obtaining various meetings, to placing the first contract employee on assignment there with the customer (or providing a new employee for direct placement with the customer). The 18-month duration of the covenant not to compete in Ms. Kelly's Confidentiality/Non-Competition Agreement with TECH USA reflects that lengthy sales cycle and also the fact that, after a salesperson or recruiter leaves TECH USA's employment, there needs to be a reasonable period (18-24 months) in which the former salesperson or recruiter refrains from soliciting Plaintiff's customers and employees and/or competing in the relevant market area where such former employee worked.   This hiatus allows for the orientation and training of a new salesperson to replace the former employee and for the orderly transition to the replacement salesperson of TECH USA customer accounts that the former salesperson serviced during his/her employment.

25.     In training its staffing salespeople and recruiters, TECH USA provides them with Confidential Information and Trade Secrets that TECH USA has developed over its 15-year history, affording the salesperson access to specific data on existing customers and prospective customers, including but not limited to non-public contact information for those customers'

hiring managers, as well as methods, techniques, and tools to price Plaintiff's services and expand its business/servicing footprint within the customer's organization, in order to grow TECH USA's offerings/services from finding personnel for one business unit or department (e.g. engineering/light industrial) within a customer to several units or departments with the customer's organization (e.g. IT, Infrastructure-Telecommunications, Scientific, etc.). Confidential Information and Trade Secrets that TECH USA salespeople, including the Defendant Ms. Kelly, receive in order to perform their jobs include corporate and other customer names, street addresses, telephone numbers, hiring manager contact information (including, without limitation, hiring manager direct dial phone number and email address), pricing margins used in past transactions, customer preferences on preferred staffing solutions -- whether they utilize contract assignments, direct/permanent placements, "right to hire" (otherwise known as "temp to perm") arrangements, or other staffing solutions -- in securing new personnel.

26.     All of the Confidential Information and Trade Secrets described in the preceding paragraph constitutes information that TECH USA has developed over many years with substantial effort and experience; Plaintiff has safeguarded that Confidential Information and those Trade Secrets -- it was not and has not been public information, nor was it (or has it been) readily available to Plaintiff's competitors.  In fact, the Confidential Information and Trade Secrets would be very valuable to TECH USA's competitors, and it would take them substantial time and expense to ascertain it.  While an element or two of the above Confidential Information and Trade Secrets may be ascertainable outside of TECH USA's business (such as the customer's corporate name and a switchboard or other listed phone number), it is the combination of all of the elements, especially hiring manager contact information, including hiring managers' and other contact persons' email addresses and direct dial phone numbers,

customer pricing margins, and customer preferences on preferred staffing solutions, together with the identity, skillsets, salary levels, and contact information of the TECH USA employees providing those solutions, that proves extremely valuable, indeed indispensable to TECH USA's (and to any competitor's) business.   That information as a whole is not known outside of Plaintiff's business.   Indeed, Defendant Ms. Kelly, formerly with Plaintiff's engineering/light industrial division, has joined one or more of the Entity Defendants, staffing firms in competition with Plaintiff, in virtually the same sales role, as evidenced by the sales solicitation she made to TECH USA's engineering customer Caltrop in Phoenix in late October 2013.   The TECH USA Confidential Information and Trade Secrets possessed by Defendant Ms. Kelly are particularly valuable to her new employer: one or more of the Entity Defendants and its/their president Defendant Mr. Kantner.

27.     Only those employees of Plaintiff involved in recruiting, sales (such as Ms. Kelly), and sales management, know the above Confidential Information and Trade Secrets, and TECH USA safeguards it by taking such measures as (i) requiring that recruiting, sales, and sales management employees of Plaintiff who need access to Confidential Information and Trade Secrets (in order to service TECH USA customers and accounts) sign Plaintiff's form Confidentiality/Non-Competition Agreement, which (among other things) explicitly protects those Trade Secrets and Confidential Information and requires the return of all TECH USA Company Property at termination of employment, (ii) not providing the above Confidential Information and Trade Secrets to third parties outside of TECH USA, and (iii) not posting Plaintiff's customer names or other customer information (or Plaintiff employee names or other Plaintiff employee information) on the TECH USA website; rather, the TECH USA Confidential Information and Trade Secrets are provided only to those management, sales and recruiting

18

employees (who comprise a small percentage of Plaintiff's total employee roster) having a "need to know." Access to the current TECH USA database that came into use in 2006 is via unique user name and password only, both of which are inactivated when an employee leaves the company. The above Confidential Information and Trade Secrets are extremely valuable to TECH USA and its competitors because, armed with that Information and those Secrets, a competing staffing firm or former employee of Plaintiff could initiate a business relationship with Customers of TECH USA and steal business from Plaintiff. The late October 2013 sales call by Defendant Ms. Kelly, for her own benefit and for that of her new employer (one of more of the Entity Defendants) is a classic example of such theft and misappropriation. Defendant Ms. Kelly is wrongfully using, for her and Defendants' own benefit, TECH USA's Confidential Information (and Trade Secrets) in order to steal business from TECH USA, all in violation of the terms of Defendant Ms. Kelly's Confidentiality/Non-Competition Agreement with Plaintiff (and in violation of applicable law).

28.     As described above, Plaintiff expends many years of effort and large sums, e.g. salaries of TECH USA management, recruiting, and sales employees (including the tens of thousands of dollars expended on Defendant Ms. Kelly's compensation, on her training and sales development, as well as her time and expenditures on meetings with customer representatives, and the like) in developing and enhancing the Confidential Information and Trade Secrets. Properly acquiring or duplicating the above Confidential Information and Trade Secrets, as a whole, would be very difficult to accomplish because such Information and/or Secrets are not located in one publicly accessible database. It has been developed over many years of numerous cold calls and meetings, and includes, as well, Plaintiff's detailed experience in actual

transactions with the customer(s) in order to determine pricing margins and customer preferences on staffing solutions provided.

29.     TECH USA's Managing Directors (who are also in sales) and outside salespersons (known as "Account Executives" or "Business Development Managers"), as well as Plaintiff's inside salespersons (beginning with entry-level "Recruiters" having promotion opportunity to "Senior Recruiters"), all sign their own "Confidentiality/Non-Competition Agreement" with Plaintiff in order to protect Plaintiff's interests in its business relationships with TECH USA customers and contract employees (or candidates) that Plaintiff assigns/refers to its customers, and also to protect Plaintiff's Confidential Information, Trade Secrets, and Company Property that are made available to TECH USA employees in order for them successfully to secure and service customers.  Despite the extended sales cycle needed to secure certain large corporate customers (up to 24 months), Defendant Ms. Kelly was required to sign a non-competition agreement with a duration of only 18 months.  Moreover, 18 months of "cooling off" by locking out a former employee from a particular market or group of customers s/he serviced while a TECH USA employee, as explained above, affords Plaintiff a reasonable (but sometimes insufficient) opportunity to train the new salesperson to replace the former employee and to transition the accounts in question to the new salesperson without interference from the former employee.  On the other hand, TECH USA's reasonable post-term restrictions do not unduly burden a former employee in her/his job search or pursuit of new career opportunities.  In this case, however, the Defendant Ms. Kelly saw fit in late October 2013, within just the first month of the 18-month post-term covenant term following the termination of her TECH USA employment, to conduct an aggressive sales call, for her own benefit and for that of her new

employer (one of more of the Entity Defendants) in a classic case of breach of valid post-term restrictions.

30.     The geographic scope of TECH USA's non-compete (50 miles) reflects the typical size of a large metropolitan area in the United States.  Although TECH USA operates in many larger markets such as Northern Virginia/Washington, D.C., Atlanta, Orlando, Tampa, Dallas, Phoenix, Baltimore/Central Pennsylvania (I-83, I-695, and I-97 corridors), and Philadelphia/Southern New Jersey/Delaware where a distance of 75 or even 100 miles might be appropriate, Plaintiff's CEO Mr. Howell directed that the geographic line be drawn at 50 miles, a benefit to former employees.  If there were no such restriction from each TECH USA office in which an employee had worked, then a former employee (such as the Defendant Ms. Kelly) would be free to join or locate an existing or new competing business near one of Plaintiff's offices where that employee worked and attempt to exploit for her/his own benefit TECH USA's goodwill and Confidential Information/Trade Secrets and compete directly with that TECH USA office by soliciting many of Plaintiff's Customers there (including, without limitation, ones the former employee had serviced at the TECH USA office/offices where s/he had worked, such as Caltrop in the current case).  Again, the fifty (50) mile radius strikes a reasonable balance between Plaintiff's business interests and its former employee's ability to earn a livelihood; indeed, it is overly reasonable to the Defendant Ms. Kelly.  TECH USA's former employees, such as Defendant Ms. Kelly, are then free to be employed in a similar staffing industry sales job outside the restricted area, or in a different industry or job within the 50-mile restricted area, as long as s/he does not violate the other provisions of her Confidentiality/Non-Competition Agreement with TECH USA (or violate applicable law on Trade Secrets).  Here, the Defendant Ms. Kelly, who had served as an "Account Executive" in the engineering/light industrial division

or vertical for TECH USA in Phoenix, AZ, has chosen to be employed as an business

consultant/salesperson in a competing staffing firm's Phoenix office within the 50-mile

prohibited zone (as evidenced by her LinkedIn Profile and her late October 2013 sales call on a

TECH USA engineering customer in Phoenix) - - all in clear violation of her

Confidentiality/Non-Competition Agreement with TECH USA.

## COUNT I

### Breach of Contract (Post-Term Covenant Not to Solicit Customers of TECH USA) –

### Defendant Ms. Kelly

31.     Plaintiff TECH USA hereby incorporates paragraphs 1-30 as if each were fully set

forth herein.

32.     As observed by witness Robby Rhodes on October 23, 2013, Defendant

Ms. Kelly solicited TECH USA engineering customer Caltrop at Caltrop's site in Phoenix, AZ,

thereby violating the provisions of Confidentiality/Non-Competition Agreement ¶ 3(c) by

"solicit[ing], induc[ing], attempt[ing], to solicit or induce… any Customer of TECH USA…to

terminate, eliminate, or reduce its business relationship" with TECH USA, or "do anything,

directly or indirectly, to interfere with the business relationship between" TECH USA and its

Customer Caltrop.

33.     Likewise, Defendant Ms. Kelly solicited TECH USA's Customer Caltrop to do

business with her and her new company in violation of Confidentiality/Non-Competition

Agreement ¶ ¶ 3(a) and 4(b) during the first month after her employment with TECH USA

terminated (her 18-month customer non-solicitation covenant had barely begun).  As the third

party witness Mr. Rhodes observed, Defendant Ms. Kelly was very aggressive in soliciting

TECH USA Customer Caltrop's manager Len and was very insistent that he review some

resumes of candidates from Defendant Ms. Kelly and her new company, giving Caltrop's manager Len her business card after Len finally told her "ok, that's fine."

34.     The harm to Plaintiff resulting from the inducement or attempt to induce Caltrop to terminate, eliminate or reduce its business relationship with TECH USA and/or Defendant Ms. Kelly's solicitation to Caltrop to do business with her and her new company is irreparable, and, unless enjoined, will continue to cause damage and irreparable harm to Plaintiff.  The harm cannot be compensated in monetary damages.

WHEREFORE, Plaintiff prays judgment against the Defendant Ms. Kelly as follows:

(a) Entry of a Preliminary and Permanent Injunction pursuant to FRCP 65, and paragraphs 3 (a), 3(c) and 4(b) of her Confidentiality/Non-Competition Agreement with the Plaintiff in this case, enjoining the Defendant Ms. Kelly, her agents, servants, and employees, and all those acting in concert with them, from violating the non-competition provisions of such Agreement.

(b) Entry of an Order requiring an accounting by the Defendant Ms. Kelly to TECH USA of her sales and revenues from or in connection with her contractual violations, as to which sales and revenues TECH USA may be entitled, in whole or in part, as a result of such Defendant Ms. Kelly's aforesaid acts.

(c) Entry of a judgment against Defendant Ms.  Kelly for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees, costs, and expenses in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and her).

## COUNT II

## Breach of Contract (Post-Term Covenant Not to Compete) – Defendant Ms. Kelly

35.     Plaintiff TECH USA hereby incorporates paragraphs 1-34 as if each were fully set forth herein.

36.     By reason of Defendant Ms. Kelly's joining and working for one or more of the Entity Defendants (and for Defendant Mr. Kantner), each a TECH USA competitor and in its/their Phoenix, AZ office in the similar position of business consultant (salesperson), well within "fifty (50) miles" of Plaintiff's Phoenix, AZ office where she worked for TECH USA, [see Agreement, ¶ 4(a)], Defendant Ms. Kelly has violated the post-term non-competition covenant in the Confidentiality/Non-Competition Agreement ¶ 4(a).  Further, it is indisputable that she is engaged in "(in whole or in part) in the business of recruiting, assigning, placing, or providing employees, on a contingent search, direct placement, permanent, contract or temporary basis," within 50 miles of the Phoenix, AZ office of Plaintiff where she used to work and within 18 months of her Termination of Employment, all in violation of Confidentiality/Non-Competition Agreement ¶ 4(a).   Among other things (as observed by witness Robby Rhodes on October 23, 2013), Defendant Ms. Kelly identified herself as a former TECH USA employee and then solicited TECH USA engineering customer Caltrop for staffing services, at Caltrop's site in Phoenix, AZ, offering the Caltrop manager there candidate resumes from her new company.

37.     The Defendant Ms. Kelly's acts (as detailed above) in violating the post-term covenant not to compete in the Confidentiality/Non-Competition Agreements that she signed with TECH USA have caused, and, unless enjoined, will continue to cause damage and irreparable harm to TECH USA.  The harm cannot be fully compensated in monetary damages.

WHEREFORE, Plaintiff prays judgment against the Defendant Ms. Kelly as follows:

(a) Entry of a Preliminary and Permanent Injunction pursuant to FRCP 65, and paragraphs 4(a) and 5 of her Confidentiality/Non-Competition Agreement with the Plaintiff in

this case, enjoining the Defendant Ms. Kelly, her agents, servants, and employees, and all those acting in concert with them, from violating the non-competition provisions of such Agreement.

(b) Entry of an Order requiring an accounting by the Defendant Ms. Kelly to TECH USA of her sales and revenues from or in connection with her contractual violations, as to which sales and revenues TECH USA may be entitled, in whole or in part, as a result of such Defendant Ms. Kelly's aforesaid acts.

(c) Entry of a judgment against Defendant Ms.  Kelly for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees, costs, and expenses in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreements between Plaintiff and her).

## COUNT III

### Breach of Contract (Confidential Information) – Defendant Ms. Kelly

38.     Plaintiff TECH USA hereby incorporates paragraphs 1-37 as if each were fully set forth herein.

39.     On information and belief, Defendant Ms. Kelly has also revealed and reviewed with one or more of the Entity Defendants names and other information on TECH USA's customers, which constitutes "Confidential Information" under the Confidentiality/Non-Competition Agreement and TECH USA's Trade Secret(s).

40.     The names and other information on Plaintiff's customers that Defendant Ms. Kelly has, on information and belief, revealed to one or more of the Entity Defendants constitute "Confidential Information" (as defined in Defendant Ms. Kelly's Confidentiality/Non-Competition Agreement with TECH USA) and also constitute "Trade Secrets" (as defined under Maryland law).  Such disclosure by Defendant Ms. Kelly of Confidential Information for her

own benefit (or for the benefit of a third party, including, without limitation, one or more of the Entity Defendants) was in clear violation of the Confidentiality/Non-Competition Agreement the Defendant Ms. Kelly had entered into with Plaintiff.

41.     Any and all use of TECH USA's Confidential Information (as detailed above) by the Defendant Ms. Kelly for her own benefit (or for the benefit of a third party, including, without limitation, one or more of the Entity Defendants) and/or merely the disclosure or divulging of Plaintiff's Confidential Information to any such third party would constitute acts in violation of paragraph 1 of the Confidentiality/Non-Competition Agreement(s) between Defendant Ms. Kelly and Plaintiff.

42.     Those acts described above by Defendant Ms. Kelly in violation of the Confidential Information provisions of her Confidentiality/Non-Competition Agreement have caused, and, unless enjoined, will continue to cause damage and irreparable harm to Plaintiff TECH USA.  The harm cannot be fully compensated in monetary damages.

WHEREFORE, Plaintiff prays judgment against the Defendant Ms. Kelly as follows:

(a)         Entry of a Preliminary and Permanent Injunction pursuant to Federal Rule of Civil Procedure 65, and paragraphs 1 and 5 of the Confidentiality/Non-Competition Agreement, enjoining the Defendant Ms. Kelly, her agents, servants, and employees, and all those acting in concert with them, from violating the Confidential Information provisions of such Agreement.

(b)     Entry of an Order requiring an accounting by the Defendant Ms. Kelly to TECH USA of her sales and revenues from or in connection with her contractual violations, as to which sales and revenues TECH USA may be entitled, in whole or in part, as a result of such Defendant Ms. Kelly's aforesaid acts.

(c) Entry of a judgment against the Defendant Ms. Kelly for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees, costs, and expenses in connection with this proceeding pursuant to paragraph 9, the attorney fees provision of the Confidentiality/Non-Competition Agreement between Plaintiff and Ms. Kelly).

## COUNT IV

### Breach of Contract (Misappropriation of Company Property)–Defendant Ms. Kelly

43.     Plaintiff TECH USA hereby incorporates paragraphs 1-42 as if each were fully set forth herein.

44.     On information and belief, Defendant Ms. Kelly had removed from Plaintiff's premises in Phoenix, AZ, at some point before her late-September 2013 resignation, certain Company Property of TECH USA, including, without limitation, TECH USA customer list(s), Plaintiff's Customers' hiring manager contact information, email addresses, direct dial telephone numbers, customer pricing and margin tolerances, and other confidential and/or privileged information.  Any continued retention by Defendant Ms. Kelly of Company Property of TECH USA is a violation of their Confidentiality/Non-Competition Agreement, paragraph 2.

45.     The above-described violations of the Company Property provisions in paragraph 2 of the Defendant Ms. Kelly's Confidentiality/Non-Competition Agreement with Plaintiff has caused, and, unless enjoined, will continue to cause damage and irreparable harm to TECH USA. The harm cannot be fully compensated in monetary damages.

WHEREFORE, Plaintiff prays judgment against Defendant Ms. Kelly as follows:

(a)     Entry of a Preliminary and Permanent Injunction pursuant to Federal Rule of Civil Procedure 65, and paragraphs 2 and 5 of the Confidentiality/Non-Competition Agreement, enjoining the Defendant Ms. Kelly, her agents, servants, and employees, and all

those acting in concert with them, from violating the provisions of paragraph 2 of the Confidentiality/Non-Competition Agreement, and ordering the return of all Company Property in or under her (or their) possession or control to TECH USA within five (5) days of this Court's Injunction order.

(b)    Entry of an Order requiring an accounting by the Defendant Ms. Kelly to TECH USA of her sales and revenues from or in connection with her contractual violations, as to which sales and revenues TECH USA may be entitled, in whole or in part, as a result of such Defendant Ms. Kelly's aforesaid acts.

(c)    Entry of a judgment against the Defendant Ms. Kelly for TECH USA's costs and expenses (including, without limitation its reasonable attorneys' fees, costs, and expenses in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and Ms. Kelly).

## COUNT V

### Statutory Trade Secret Misappropriation – All Defendants

46.    Plaintiff TECH USA hereby incorporates paragraphs 1-45 as if each were fully set forth herein.

47.    As recited in paragraph 1 of the Confidentiality/Non-Competition Agreement, in addition to Confidential Information, the Defendant Ms. Kelly received from Plaintiff in the course of her TECH USA employment Trade Secrets (as defined in the Maryland Uniform Trade Secrets Act) (the "Act"), Md. Comm. Law Code Ann. §11-1201(e).

48.    Among the Trade Secrets entrusted to Defendant Ms. Kelly during her employment with Plaintiff was its customer list(s), including, without limitation, the identity of various TECH USA customers (including, without limitation, its engineering customer Caltrop

in the Phoenix area), as well as points of contact such as hiring managers at such customers (including without limitation such managers' email addresses and direct dial telephone numbers) and such customers' pricing/margins for contract assignments of personnel, direct placements, right-to-hire arrangements, and other staffing solutions preferred by such customers.  The Trade Secrets described throughout this Count constitute information that TECH USA has developed over many years (with substantial effort and expenditures of resources) and that Plaintiff has safeguarded as Trade Secrets - - it was not public information, nor was it readily available to its competitors.  In fact, the Trade Secrets would be very valuable to TECH USA's competitors, and it would take them substantial time and expense to ascertain them.

49.     Only those of Plaintiff's employees involved in management, sales and recruiting have access to the above Trade Secrets, and TECH USA safeguards those Secrets by taking such measures as (i) requiring that those employees of Plaintiff who access Trade Secrets in order to service its customers and accounts (such as Defendant Ms. Kelly) to sign the TECH USA-form Confidentiality/Non-Competition Agreement, which (among other things) explicitly protects Plaintiff's Trade Secrets and Confidential Information and requires the return of all TECH USA Company Property at termination of employment, (ii) not providing the Trade Secrets to third parties outside of TECH USA, and (iii) not posting Plaintiff's customer names or other customer information on the TECH USA website.  Instead, Plaintiff's Trade Secrets are provided to those sales and recruiting employees (who comprise a small percentage of TECH USA's total employee roster) having a "need to know," and access to the company database started in 2006 is via unique user name and password only, both of which are inactivated when an employee leaves the company.

50.     Defendant Ms. Kelly expressly agreed in the first sentence of paragraph 5 of the Confidentiality/Non-Competition Agreement that she signed with TECH USA that any breach by Defendant of paragraphs 1-4 of that Agreement "will cause [TECH USA] immediate irreparable harm and that no remedy at law would be adequate to compensate [TECH USA] in any such event."

51.     On information and belief, Defendant Ms. Kelly, a former Account Executive in Plaintiff's engineering/light industrial division and current salesperson for one or more of the Entity Defendants, misappropriated TECH USA's Trade Secrets after Termination of Employment, for her own benefit, and/or for the benefit of a third party, including, without limitation, for one or more of the Entity Defendants, which compete with Plaintiff.  On information and belief, such acts of Defendant(s) in misappropriating TECH USA's Trade Secrets have been willful and malicious.

52.     On information and belief, all of the Defendants willfully and maliciously engaged in the misappropriation of TECH USA's Trade Secrets by receiving TECH USA's Customer information after Defendant Ms. Kelly's resignation from Plaintiff.  Defendant Mr. Kantner, as a staffing executive, who by his own admission has 28 years' experience, and the Entity Defendants, each (on information and belief) with decades-long experience in the staffing industry, knew, as did Defendant Ms. Kelly, (or should have known) that the information described above that it was obtaining from Defendant Ms. Kelly consisted of its competitor TECH USA's Trade Secrets.

53.     Plaintiff has suffered damage and, unless the misappropriation detailed above is enjoined, will continue to suffer damage as a result of Defendant Ms. Kelly's and/or all the other

Defendants' unlawful misappropriation of Plaintiff's Trade Secrets. The harm cannot be fully recompensed in monetary damages, and is irreparable.

WHEREFORE, Plaintiff prays judgment against all Defendants as follows:

(a)    Entry of a Preliminary and Permanent Injunction against all of the Defendants and their agents, servants and/or employees, and all those acting in concert with any of them, enjoining them pursuant to § 1202 of the Act (and paragraphs 1 and 5 of the Confidentiality/Non-Competition Agreement) from using or disclosing TECH USA's Trade Secrets for their own benefit and from otherwise violating the Act (and/or paragraphs 1 and 5 of the Confidentiality/Non-Competition Agreement).

(b)    Entry of a judgment jointly and severally against Defendants Ms. Kelly and all the other Defendants pursuant to § 1203 of the Act for exemplary damages in an amount not exceeding twice any damages award made under § 1203(a), because such Defendant(s) have (as stated above) engaged in a willful and malicious misappropriation, except (as to Ms. Kelly only) to the extent a damage claim against her is required to be arbitrated.

(c)    Entry of a judgment jointly and severally against Defendants Ms. Kelly and all of the other Defendants for Plaintiff's costs and expenses (including, without limitation, its reasonable attorneys' fees, costs, and expenses in connection with the proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and Defendant Ms. Kelly).

(d)    Entry of a judgment jointly and severally against Defendants Ms. Kelly and all of the other Defendants pursuant to § 1204 of the Act for Plaintiff's costs and expenses (including, without limitation, its reasonable attorneys' fees and court costs in connection with

this proceeding), since all such Defendant(s) have (as stated above) engaged in a willful and malicious misappropriation.

## COUNT VI

**Tortious Interference with the Contract between the Plaintiff and Defendant Ms. Kelly –**

**Defendant Mr. Kantner and the Entity Defendants**

54.      Plaintiff TECH USA hereby incorporates paragraphs 1- 53 as if each were fully set forth herein.

55.      Plaintiff established contractual and other advantageous business relationships with its key management, sales, and recruiting employees including, without limitation, the Defendant Ms. Kelly.

56.      Defendant Mr. Kantner (by his own admission, having 28 years of staffing industry experience) and one or more of the Entity Defendants, as staffing firm(s) with decades-long experience in the industry, knew well of TECH USA's contractual and other advantageous business relationships with its key management, sales, and recruiting employees, and, furthermore (on information and belief) learned of Defendant Ms. Kelly's contract with TECH USA when hiring her to join their ranks.

57.      Despite knowledge of Plaintiff's advantageous business relations and contractual relationships with its key management, sales, and recruiting employees, Defendant Mr. Kantner, and one or more of the Entity Defendants, tortiously and, on information and belief, maliciously, intentionally and unjustifiably, interfered in TECH USA's business relations and contractual relations with Defendant Ms. Kelly by effectively soliciting and encouraging the Defendant Ms. Kelly to breach her contractual and legal obligations to Plaintiff and/or resign her employment to join the employ of such Defendants (or one or more of them), in violation of Defendant Ms.

Kelly contractual obligations to TECH USA, and, further, to breach her post-term obligations to Plaintiff on Non-Solicitation of Customers and on Non-Competition, and, on information and belief, causing her to divulge/disclose Plaintiff's Confidential Information (in violation of Ms. Kelly's contractual obligations) and Trade Secrets (in violation of Maryland law).

58.     Additionally, after receipt of Plaintiff's October 29, 2013 demand letter attached hereto as Exhibit 4, Defendant Mr. Kantner, and one or more of the Entity Defendants, continued to encourage Defendant Ms. Kelly to continue to breach her contractual and other obligations to TECH USA, characterizing in writing Plaintiff's non-compete covenant as "worthless,"  and chastising Plaintiff's TECH USA for investigating this matter and asserting his client the Plaintiff's rights (Defendant Kantner wrote him on October 29, 2013, in pertinent part,: "…please do not threaten or harass Miss Kelly any further with demands. Otherwise I will be forced to defend properly with further actions on our part.")

59.     Plaintiff TECH USA has suffered damage and will continue to suffer damage as a result of the tortious interference of Defendant Mr. Kantner and of one or more of the Entity Defendants.  The harm cannot be fully recompensed in monetary damage, and is irreparable.

WHEREFORE, Plaintiff prays judgment against Defendant Mr. Kantner and the Entity Defendants as follows:

(a)            Entry of a Preliminary and Permanent Injunction against Defendant Mr. Kantner, the Entity Defendants, and his and their agents, servants and/or employees, and those acting in concert with it, enjoining them from further tortious interference.

(b)            Entry of an Order requiring an accounting by Defendant Mr. Kantner and the Entity Defendants to TECH USA of their sales and revenues as a result of (or in connection with) his/its/their aforesaid acts of tortious interference, as to which sales and

revenues TECH USA may be entitled, in whole or in part, as a result of such Defendants' aforesaid acts, and awarding Plaintiff punitive damages from such Defendants in the amount of One Million Dollars ($1,000,000).

(c)     Entry of a judgment against such Defendants for TECH USA's costs and expenses.

## COUNT VII

### Breach of Duty of Loyalty – Defendant Ms. Kelly

60.     Plaintiff TECH USA hereby incorporates paragraphs 1-59 as if each were fully set forth herein.

61.     As an Account Executive, Defendant Ms. Kelly owed a duty of loyalty to Plaintiff.  Given her sensitive position in sales in Plaintiff's engineering/light industrial division or vertical and in dealing with some of TECH USA's most valued customers, Defendant Ms. Kelly was entrusted with TECH USA's Confidential Information and Trade Secrets.

62.     On information and belief, Defendant Ms. Kelly breached her duty of loyalty willfully and maliciously to Plaintiff:

(i)     by acting contrary to the best interests of her employer and principal, TECH USA, both during employment and after her resignation;

(ii)     by disclosing to TECH USA competitor Defendants information on TECH USA customers, in violation of her obligations as to Confidential Information (under agreement with TECH USA) and Trade Secrets (pursuant to Maryland law);

(iii)     by failing to act solely in the best interests of TECH USA; and

(iv)      by misusing and misappropriating information belonging to TECH USA which Plaintiff intended to be confidential and the disclosure of which is likely to cause irreparable harm to TECH USA.

63.   Plaintiff TECH USA has suffered damage and will continue to suffer damage as a result of Defendant Ms. Kelly's breach of duty of loyalty.   The harm cannot be fully recompensed in monetary damage, and is irreparable.

WHEREFORE, Plaintiff prays judgment against the Defendant Ms. Kelly as follows:

(a)      Entry of a Preliminary and Permanent Injunction against Defendant Ms. Kelly and her agents, servants and/or employees, and those acting in concert with them, enjoining them from further breach of the duty of loyalty.

(b)      Entry of an Order requiring an accounting by Defendant Ms. Kelly to TECH USA of her sales and revenues, as a result of (or in connection with) her aforesaid acts in breach of the duty of loyalty, as to which sales and revenues TECH USA may be entitled, in whole or in part, as a result of her aforesaid willfully and maliciously disloyal acts, and awarding Plaintiff punitive damages from Defendant Ms. Kelly in the amount of One Million Dollars ($1,000,000), except to the extent a damage claim against her is required to be arbitrated.

(c)      Entry of a judgment against Defendant Ms. Kelly for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees, costs, and expenses in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and Defendant Ms. Kelly).

## COUNT VIII

## Common Law Unfair Competition - All Defendants

64.     Plaintiff TECH USA hereby incorporates paragraphs 1-63 as if each were fully set forth herein.

65.     On information and belief, each of the Defendants has committed the tort of unfair competition against Plaintiff.   They have acted unfairly and deceptively, and have acted deliberately, maliciously, and with reckless disregard for Plaintiff's rights and the rights of members of the public.   As to Defendant Ms. Kelly, on October 23, 2013, she identified herself as a former employee of Plaintiff to TECH USA's engineering customer Caltrop's manager and then proceeded to solicit that manager for staffing business on behalf of her new company (even offering him candidate resumes), as a third party witness looked on.

66.     Plaintiff TECH USA has suffered damage and will continue to suffer damage as a result of Defendants' unfair competition, as described above.   The harm cannot be fully recompensed in monetary damage, and is irreparable.

WHEREFORE, Plaintiff prays judgment against all of the Defendants as follows:

(a)     Entry of a Preliminary and Permanent Injunction against all of the Defendants and their agents, servants and/or employees, and those acting in concert with them, enjoining them from engaging in unfair competition with TECH USA.

(b)     Entry of an Order requiring an accounting by the each of the Defendants to TECH USA of their respective sales and revenues, as a result of (or in connection with) his/its/their aforesaid acts in violation of the common law of unfair competition, as to which sales and revenues TECH USA may be entitled, in whole or in part, as a result of his/its/their aforesaid acts, and awarding Plaintiff punitive damages from all of the Defendants, jointly and severally, in the amount of One Million Dollars ($1,000,000), except (as to Ms. Kelly only) to the extent a damage claim against her is required to be arbitrated.

(c)     Entry of a judgment against all of the Defendants jointly and severally for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees, costs, and expenses in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and Defendant Kelly).

**COUNT IX**

**Civil Conspiracy - All Defendants**

67.     Plaintiff TECH USA hereby incorporates paragraphs 1-66 as if each were fully set forth herein.

68.     On information and belief, Defendants agreed:

(i)     that Defendant Ms. Kelly would violate her various obligations under her Confidentiality/Non-Competition Agreement with TECH USA including, without limitation, her customer non-solicitation covenant, her covenant not to compete, and obligations with respect to Confidential Information/Trade Secrets, which she did;

(ii)     that Defendant Ms. Kelly would breach Defendant Ms. Kelly's duty of loyalty owed to TECH USA, which occurred;

(iii)     that Defendant Mr. Kantner and one or more of the Entity Defendants would interfere tortiously with TECH USA's contractual and other advantageous business relationships with its key management, sales, and recruiting employees, which they did;

(iv)     that Defendant Ms. Kelly would solicit Plaintiff's customer Caltrop (which she had serviced while a TECH USA employee), in blatant (or other intentional) disregard of the post-term customer non-solicitation covenant in the Confidentiality/Non-Competition Agreement between TECH USA and Defendant Ms. Kelly, which she did;

(v) that Defendant Ms. Kelly would compete against Plaintiff in blatant (or other intentional) disregard of the post-term covenants not to compete in the Confidentiality/Non-Competition Agreement between TECH USA and Defendant Ms. Kelly, which she did;

(vi) to misappropriate Plaintiff's Confidential Information (in violation of such Confidentiality/Non-Competition Agreement) and TECH USA's Trade Secrets (in violation of Maryland Law), which they did; and

(vii) to compete unfairly with Plaintiff, which they did.

69.     On information and belief, the Defendants committed the above civil conspiracy willfully and with malice toward the Plaintiff.

70.     Plaintiff TECH USA has suffered damage and will continue to suffer damage as a result of Defendants' civil conspiracy and acts in furtherance thereof, as described in paragraphs 68-69 above.  The harm cannot be fully recompensed in monetary damage, and is irreparable.

WHEREFORE, Plaintiff prays judgment against all of the Defendants as follows:

(a)          Entry of a Preliminary and Permanent Injunction against all of the Defendants and their agents, servants and/or employees, and those acting in concert with them, enjoining them from future acts in furtherance of the civil conspiracy.

(b)          Entry of an Order requiring an accounting by each of the Defendants to TECH USA of their sales and revenues, as a result of (or in connection with) their aforesaid civil conspiracy, as to which sales and revenues TECH USA may be entitled, in whole or in part, and awarding Plaintiff compensatory damages (except, as to Ms. Kelly only, to the extent a damage claim against her is required to be arbitrated), and, in light of all of the Defendants' engaging in the aforesaid civil conspiracy willfully and with malice toward the Plaintiff, punitive damages from all of the Defendants, jointly and severally, in the amount of

One Million Dollars ($1,000,000), except (as to Defendant Ms. Kelly only) to the extent a damage claim against her is required to be arbitrated.

      (c)      Entry of a judgment against all of the Defendants, jointly and severally, for TECH USA's costs and expenses (including, without limitation, its reasonable attorneys' fees, costs, and expenses in connection with this proceeding pursuant to paragraph 9 of the Confidentiality/Non-Competition Agreement between Plaintiff and Defendant Ms. Kelly).

Dated: November 27, 2013

Allan P. Hillman
Kern & Hillman, LLC
2911 Dixwell Avenue, Suite 203
Hamden, CT 06518-3915
(203) 782-9076
allan@franchiselawsource.com
U.S. District Court No. 00119

Grover C. Outland III
TECH USA, LLC
8334 Veterans Highway
Millersville, MD 21108
(410) 846-9095
gco@techusa.net
U.S. District Court No. 24064

Attorneys for Plaintiff